ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| LORD CONSTRUCTION GROUP, INC.<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO AUTONOMO DE TOA ALTA<br><br>Peticionario | **KLCE202400191** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: D CD2015-2114<br><br>Sobre: Cobro de dinero |
|---|---|---|
| LORD CONSTRUCTION GROUP, INC.<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO AUTONOMO DE TOA ALTA<br><br>Peticionario | Consolidado<br><br><br>**KLCE202400193** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: D CD2015-2114<br><br>Sobre: Cobro de dinero |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 10 de abril de 2024.

Comparece ante este foro el Municipio de Toa Alta (Municipio de Toa Alta) mediante un recurso de *certiorari* identificado con el núm. KLCE202400191 presentado el 14 de febrero de 2024, y nos solicitan la revisión de la *Resolución Enmendada* notificada el 16 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* a la *Moción de Desestimación de la Demanda Enmendada y/o*

---

[1] La *Resolución* fue emitida el 28 de agosto de 2023, siendo enmendada el 10 de enero de 2024.

*Sentencia Sumaria* presentada por el Municipio de Toa Alta.

A su vez, se encuentra ante nuestra consideración el recurso de *certiorari* identificado con el núm. KLCE202400193, presentado el 15 de febrero de 2024, por Fidelity Company of Maryland (Fidelity), mediante el cual nos solicitan la revisión de la misma *Resolución Enmendada*. El foro primario declaró *No Ha Lugar* a la *Moción Uniéndonos a Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria […]* presentada el 19 de febrero de 2021 y 1 de marzo de 2021 por Fidelity. El 28 de febrero de 2024 ordenamos la consolidación de ambos casos.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** la expedición de los recursos de *certiorari* solicitados.

## I.

Según surge del expediente, el caso tuvo su origen cuando el Municipio de Toa Alta publicó un anuncio de subasta para el proyecto sobre la "Construcción del Terminal de Carros Públicos y Edificio Multiuso". El 7 de mayo de 2010, la Junta de Subastas le adjudicó la *buena pro* a OSSAM Construction, Inc. (OSSAM), siendo entonces el contratista general del proyecto. El 12 de octubre de 2012, OSSAM suscribió un "Contrato de Construcción" con Lord Construction Group, Inc. (Lord Construction o parte recurrida), quienes se comprometieron a suministrar la mano de obra, materiales y equipos necesarios para ejecutar ciertos trabajos de construcción. No obstante, en o alrededor del 4 de febrero de 2015, el Municipio de Toa Alta dio por terminado los trabajos del proyecto.

Debido al incumplimiento contractual, y al saldo de lo adeudado por la mano de obra, materiales y equipos utilizados para el proyecto, el 3 de septiembre de 2015, la parte recurrida presentó una *Demanda* en contra del Municipio de Toa Alta, como dueño del proyecto, y contra Fidelity, como su fiadora.[2] A su vez, el 7 de diciembre de 2020, presentó una *Demanda Enmendada* para incluir como parte demandada al contratista general del proyecto, OSSAM.[3] Alegó que, como subcontratista y suplidor de mano de obra, materiales y equipos, y conforme al Artículo 1489 del Código Civil, tenía una acción directa en cobro de dinero contra el Municipio de Toa Alta por el balance que le adeudaba a OSSAM. Por otra parte, arguyó que Fidelity había incumplido con los términos y condiciones de la fianza, al negarse a pagar las sumas reclamadas. Por lo anterior, solicitó que se condenara a la fiadora al pago de las sumas adeudadas y, además que, se condenara a ésta y al Municipio de Toa Alta al pago de costas, gastos y honorarios de abogado. Finalmente, solicitó al foro primario que emitiera una orden de embargo preventivo y prohibición de enajenar de todos los bienes muebles e inmuebles, cuentas bancarias y otros activos de los apelados en una cantidad no menor de $1,124,411.97.

Luego de múltiples incidencias procesales, el 25 de enero de 2021, el Municipio de Toa Alta presentó una *Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria*.[4] En esencia, esbozó que entre ellos

---

[2] La primera *Demanda* fue presentada el 3 de septiembre de 2015. Véase, *Demanda*, anejo I, págs. 1-19 del apéndice del recurso.
[3] La *Demanda Enmendada* fue presentada el 7 de diciembre de 2020. Véase, *Demanda Enmendada*, anejo VII, págs. 99-110 del apéndice del recurso.
[4] *Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria*, anejo XI, págs. 115-128 del apéndice del recurso.

y la parte recurrida no hay una obligación directa, ni contractual que los vincule. A su vez, que el contrato de Obras que suscribió con OSSAM, contenía una cláusula de prohibición que impedía la subcontratación sin la aprobación previa y por escrito del Municipio, hecho que alegaron no sucedió. Por lo tanto, solicitaron la desestimación de la demanda enmendada, ante la ausencia de prueba documental fehaciente que demostrara que éstos hubiesen prestado su consentimiento previo y por escrito para la contratación de Lord Construction.

En respuesta, el 27 de enero de 2021, OSAAM presentó *Escrito en Oposición a la Moción de Desestimación*.[5] En síntesis, sostuvo que los trabajos parciales son facturados por los contratistas en certificaciones parciales de pago, como, a su vez, son inspeccionadas por inspectores del Municipio. Añadió que, las certificaciones parciales de pago son pre intervenidas por el personal del Departamento de Finanzas del Municipio, siendo aprobada por escrito por el Municipio. Finalmente, alegaron que el Municipio de Toa Alta "recibió al menos 20 certificaciones parciales de pago las cuales fueron inspeccionadas, aprobadas por escrito y firmadas por el Municipio, siendo las mismas tramitadas en el departamento de finanzas y nuevamente aprobadas y pagadas por el Municipio." Como consecuencia, solicitaron que la moción de desestimación fuera declarada sin lugar.

El 19 febrero de 2021, Fidelity presentó una *Moción Uniéndonos a Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria […] y para que se dicte*

---

[5] *Escrito en Oposición a la Moción de Desestimación*, anejo XII, págs. 129-144 del apéndice del recurso.

*Sentencia Sumaria Parcial a Favor de Fidelity*.[6] Mediante la cual, reiteró que el contrato de obra entre el Municipio y OSSAM, disponía de diversos requisitos esenciales, entre ellos, que no podía subcontratar sin obtener previamente el consentimiento por escrito del Municipio. De otra parte, alegó que el contrato de fianza, incorporó los términos y condiciones del contrato de obras, y establecía que no eran responsables por las labores que no dimanaran del contrato de obras. Por lo tanto, arguyeron que como el subcontrato con Lord Construction no se hizo en cumplimiento con los requisitos del contrato entre OSSAM y el Municipio, Fidelity no es responsable por esa obligación de OSSAM.

Así las cosas, y luego de varias incidencias procesales, el 28 de agosto de 2023, el foro primario emitió una *Resolución*.[7] Mediante la cual, declaró *No Ha Lugar* a la *Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria*, presentada por el Municipio de Toa Alta. Al respecto, dispuso los siguientes hechos que no están en controversia:

> 1. El codemandado y tercero demandante, Municipio, es el dueño del Proyecto de Construcción del Terminal de Carros Públicos y Edificio Multiuso.
>
> 2. El 11 de septiembre de 2009, el Municipio, publicó un anuncio de Subasta Número 10-6008, Serie 2009-2010, para el Proyecto de "Construcción del Terminal de Carros Públicos y Edificio Multiusos".
> 3. El 7 de mayo de 2010, la Junta de Subastas del Municipio, luego de evaluar las propuestas presentadas por varios licitadores, adjudicó la buena pro del proyecto en su totalidad al codemandado y tercero demandado, OSSAM. La adjudicación

---

[6] *Moción Uniéndonos a Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria […],* anejo XV, págs. 152-240 del apéndice del recurso. El 1 de marzo de 2021, presentó nuevamente la moción.
[7] *Resolución*, anejo II, págs. 3-15 del apéndice del recurso consolidado KLCE202400193.

fue notificada a OSSAM, por la suma de $14,580,000.00.

4. El codemandado, OSSAM Construction, Inc., es el contratista general de la Construcción del terminal de Carros Públicos y Edificio Multiuso.

5. La codemandada, Fidelity, es la compañía de seguros que emitió una fianza garantizando el cumplimiento por parte de OSSAM con el pago de mano de obra, materiales y equipos suplidos por subcontratistas (Payment Bond o Fianza de Pago).

6. Luego de adjudicada la totalidad del Proyecto, el Municipio decidió realizar la construcción del Proyecto en dos (2) etapas o fases. Para realizar la primera fase se pactó contractualmente la suma de $5,715,900.00.

7. El contrato de la primera fase del Proyecto, Contrato Núm. 2011-000116, fue otorgado el 9 de octubre de 2010 y registrado en la Oficina del Contralor del Estado Libre Asociado de Puerto Rico.

8. El 4 de septiembre de 2012, una vez completada la primera fase del Proyecto, el Municipio decidió continuar con la segunda fase y otorgó un contrato de ejecución de obras con OSSAM, Contrato Número 2013-000105, por la suma de $9,869,445.00, a ser completado en 480 días, con fecha de entrega original para el 26 de diciembre de 2013. Dicho contrato está registrado en la Oficina del Contralor del Estado Libre Asociado de Puerto Rico.

9. El Contrato de Ejecución de Obras entre OSSAM y el Municipio dispone:

"SÉPTIMA: EL CONTRATISTA no podrá subcontratar los trabajos estipulado o negociar este contrato a persona u organización alguna sin previo consentimiento por escrito del MUNICIPIO."

10. El 12 de octubre de 2012, OSSAM subcontrató a la demandante Lord Electric Company of Puerto Rico ("Lord") para realizar la segunda fase del Proyecto, en donde Lord se comprometió a suministrar la mano de obra, materiales y equipos necesarios para ejecutar ciertos trabajos de servicios. Lord tendría derecho a recibir la suma de $3,000,000.00 como compensación.

11. Lord es un contratista que proveyó mano de obra y materiales en la fase dos del

Proyecto de "Construcción del Terminal de Carros Públicos y Edificio Multiuso", desde la fecha de comienzo de las labores, hasta el mes de febrero de 2015.

12. Durante la ejecución del contrato de la segunda fase se llevaron a cabo órdenes de cambio, lo que conllevó que se enmendara el Contrato Núm. 2013-000105 y se extendiera la fecha de terminación de la segunda fase hasta el 4 de junio de 2015; resultando el contrato con una cantidad contractual revisada de $9,948,642.70 para la realización de los trabajos de la fase dos del Proyecto.

13. En o alrededor del 6 de febrero de 2015, el Municipio dio por terminado los trabajos de la segunda fase del Proyecto. (Alegación número 19 de la Demanda y aceptada por los codemandados, el Municipio y Fidelity).

14. El 27 de marzo de 2015, Lord le envió una carta al Municipio, a través de su Alcalde, el Hon. Clemente Agosto Lugardo. En dicha carta, se le solicitó al Municipio, como dueño del Proyecto y bajo el Artículo 1489 del Código Civil, que retuviese o depositara en un tribunal de jurisdicción competente cualesquiera sumas de dinero que el Municipio le adeudara al contratista general, OSSAM, por cualquier trabajo realizado por dicho contratista (incluyendo retenidos no desembolsados), sobre la construcción del Proyecto. Lord nunca recibió una contestación del Municipio a su carta.

15. En la misma fecha de 27 de marzo de 2015, Lord le envió a OSSAM y a su fiadora Fidelity una carta para solicitar el cobro de lo que se le adeudaba, por los trabajos realizados en el Proyecto como subcontratista. En la carta se le notificó a Fidelity del incumplimiento de pago de OSSAM y se le requirió a Fidelity que cumpliese con sus obligaciones como fiadora, bajo la fianza de pago. Fidelity se negó a pagar las sumas adeudadas a Lord.

16. Los trabajos contenidos en las certificaciones identificadas con los números 22, 23, 24 y 25 fueron inspeccionados y aprobados para pago por el Municipio. No obstante, el Municipio negó el pago a OSSAM. (Énfasis en el original)

Sin embargo, dispuso como hechos que están en controversia, los siguientes:

1. Si las minutas del proyecto demuestran que el Municipio (dueño de la obra) conocía

y había aprobado la participación del subcontratista Lord Electric Company of PR desde la etapa inicial de la fase II del proyecto.

2. Si la certificación de pago parcial #9 demuestra, entre otras cosas, que el subcontratista era un subcontratista del proyecto y que se estaba efectuando el pago por los trabajos y materiales provistos por el subcontratista.

3. Si dicha certificación de pago parcial #9 demuestra que el pago por los trabajos y materiales fue aprobado por el Municipio.

4. Si la certificación de pago parcial #9 es solo una de 20 certificaciones parciales de pago que contiene trabajos del subcontratista que fueron aprobadas por el Municipio.

5. Si las certificaciones de pago parcial pueden considerarse como que establecerían el consentimiento por escrito del Municipio, de modo que se pudiese considerar a Lord Electric Company of PR como un subcontratista.

6. Si lo consignado en el contrato de obra (sobre el consentimiento del municipio) aparenta ser contrario a la intención de las partes (Municipio y OSSAM), por haber el Municipio efectuado pagos de certificaciones parciales que incluían las facturas del subcontratista.

Así pues, el foro de instancia concluyó que conforme a la *Sentencia* emitida por un panel hermano el 29 de julio de 2020 en el KLAN202000117, el cual ordenó la celebración de un juicio plenario para dilucidar las controversias pendientes, y a su vez, las controversias enumeradas, determinó que no se deben dilucidar mediante el mecanismo de sentencia sumaria, y que las partes tendrían su día en corte.

En desacuerdo, el 12 de septiembre de 2023, Fidelity presentó una *Moción de Reconsideración […].*[8] Mientras que, Lord Construction, el 12 de octubre de

---

[8] *Moción en Reconsideración […]*, anejo XXIV, págs. 305-314 del apéndice del recurso.

2023, presentó su oposición a la moción de reconsideración.[9]

El 10 de enero de 2024, el foro primario enmendó la resolución emitida el 28 de agosto de 2023.[10] Para atender la moción de reconsideración que presentó Fidelity, respecto a la *Moción Uniéndonos a Moción de Desestimación de la Demanda Enmendada y/o Sentencia Sumaria Presentada por el Municipio de Toa Alta y Para que se Dicte Sentencia Parcial a Favor de Fidelity*, presentada el 1 de marzo de 2021 y el 19 de febrero de 2021, a la cual declaró *No Ha Lugar*.

Inconforme, el 14 de febrero de 2024, el Municipio de Toa Alta presentó una *Petición de Certiorari*, en la que adujo que el foro primario cometió los siguientes señalamientos de error:

    A. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR LA RESOLUCIÓN SEGÚN ENMENDADA AL AMPARO DE LA NORMAS GENERALES DEL CÓDIGO CIVIL;

    B. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ADOPTAR COMO "HECHOS QUE ESTÁN EN CONTROVERSIA" LO QUE EN REALIDAD SON INFERENCIAS SOBRE CONSENTIMIENTO, INFERENCIAS QUE SON CONTRARIAS AL DERECHO APLICABLE;

    C. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DIRIMIR LAS CONTROVERSIAS PROCESALES Y SUSTANTIVAS PLASMADAS;

    D. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN DE DEMANDADA ENMENDADA Y/O SENTENCIA SUMARIA AL AMPARO DE LA REGLA 36 DE LAS REGLAS DE PROCEDIMIENTO CIVIL DE PUERTO RICO, 32 LPRA AP. V. R. 36, A PESAR DE LA CERTEZA ABSOLUTA DE TODAS LAS PARTES INCLUYENDO EL JUZGADOR DE QUE EL CONTRATISTA NO CUENTA CON LA PRUEBA DOCUMENTAL NECESARIA PARA DARLE EFICACIA AL CONTRATO.

---

[9] *Oposición a Moción de Reconsideración […],* anejo XXV, págs. 315-320.
[10] *Resolución Enmendada,* anejo XXVIII, págs. 322-335 del apéndice del recurso.

Por su parte, Fidelity, mediante su recurso, señaló el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO REALIZAR UN ANÁLISIS CABAL DE LA MOCIÓN DE SENTENCIA SUMARIA POR INSUFICIENCIA DE LA PRUEBA PROMOVIDA POR FIDELITY Y, POR ENDE, NEGARSE A DESESTIMAR UN RECLAMO QUE NO PUEDE SER OBJETO DEL CONTRATO DE FIANZA OBJETO DE ESTE PLEITO.

El 28 de febrero de 2024 emitimos una *Resolución* mediante la cual ordenamos la consolidación de ambos recursos, y en la misma fecha notificamos otra *Resolución*, concediéndole a las partes un término de 15 días para que presentaran su alegato en oposición.

Con el beneficio de la comparecencia de todas las partes, procedemos a disponer de los recursos de epígrafe.

**II.**

**-A-**

El recurso de *certiorari* permite a un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I*, supra; *Scotiabank v. ZAF Corp et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." *800 Ponce de León v. AIG*, supra. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales,
> (2) en asuntos relacionados a privilegios evidenciarios,
> (3) en casos de anotaciones de rebeldía,
> (4) en casos de relaciones de familia,
> (5) en casos revestidos de interés público, o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *McNeil Healthcare v. Mun. Las Piedras I*, supra.

El examen del *certiorari* no se da en el vacío o en ausencia de otros parámetros. *McNeil Healthcare v. Mun. Las Piedras I*, supra, pág. 404; *800 Ponce de León v. AIG*, supra. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de certiorari. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Un *certiorari* solo habrá de expedirse si, al menos, uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención. De no ser así, procede que nos abstengamos de expedir el auto solicitado, de manera que se continúen los procedimientos del caso sin mayor dilación en el foro de primera instancia.

-B-

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla

36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar, previo al juicio, que tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye,* 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, es sabido que estos son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de

acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión,* supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores*

*v. M. Cuebas, Inc.*, supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 36.3.

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales, realmente están incontrovertidos, nuestra revisión se limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Íd*, págs. 118-119.

### III.

En virtud de los señalamientos de error formulados por el Municipio de Toa Alta y Fidelity, en esencia alegan que incidió el foro primario al denegar la moción de desestimación y/o sentencia sumaria. Sin embargo, como detalláramos en la exposición del derecho,

aplicable, nuestro ámbito jurisdiccional respecto a la revisión de asuntos interlocutorios en casos civiles está delimitado, en primera instancia, por lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*. A su vez, tras también tomar en consideración los criterios dispuestos en nuestra Regla 40, *supra*, rechazamos intervenir en los méritos, para variar la determinación del foro primario.

En la *Resolución Enmendada*, el foro primario determinó que, conforme a las controversias pendientes, entre ellas, si en efecto el Municipio de Toa Alta, como dueño de la obra, brindó su consentimiento escrito para que OSSAM pudiera subcontratar a Lord Construction. A su vez, si la parte recurrida cuenta con la prueba documental para sustentar su petición y reclamar los pagos que alegadamente le adeudan, concluyó que las controversias pendientes deben dilucidarse en un juicio plenario, y no, mediante sentencia sumaria.

Por lo tanto, tras un análisis de los planteamientos formulados por las partes involucradas, y a la luz de la totalidad de las circunstancias, consideramos que el foro primario no incurrió en abuso de discreción, ni tampoco en error manifiesto al así resolver.

Así pues, brindamos deferencia al dictamen recurrido y rechazamos intervenir en los méritos para variar el dictamen recurrido. Consecuentemente, procede denegar el recurso de *certiorari* consolidado.

### IV.

Por los fundamentos antes expuestos, **DENEGAMOS** la expedición de los autos de *certiorari* solicitados.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones